FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

SEP 2 6 2013

DATE

CHIEF JUSTICE

This opinion was filed for record
at 8:00 am on Sept. 26, 2013

Ronald R. Carpenter
Supreme Court Clerk

IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Personal Restraint of | ) | No. 86241-9 |
| | ) | |
| BENJAMIN B. BROCKIE, | ) | |
| | ) | En Banc |
| Petitioner. | ) | |
| | ) Filed | SEP 2 6 2013 |

OWENS, J. -- Based on the robberies of a Pizza Hut and two banks, Benjamin Brockie was convicted of 2 counts of first degree robbery, 15 counts of first degree kidnapping, and 2 counts of making bomb threats. Brockie asks us to vacate those convictions because the jury was instructed on a means of committing first degree robbery that was not included in the charging information. Since Brockie fails to show actual and substantial prejudice resulting from the erroneous instruction, we deny his request for relief.

FACTS

In 2002, Brockie was accused of robbing a Pizza Hut, an Inland Northwest Bank, and a Safeway Federal Credit Union and of kidnapping the staff and patrons of those establishments in the course of the robberies. During his trial, the evidence

showed that the robber displayed what appeared to be a gun throughout the robberies. During closing arguments, the prosecutor made references to the gun when he referred to the robber as a "gunman" and described how the employees were forced "at gunpoint" to remove money from a vault. *See* Mot. to Vacate J. and Sentence (treated as a personal restraint petition), Ex. D at 807. Throughout the trial, Brockie maintained that he was not involved in the robberies.

By law, there are distinct ways—or means—to commit first degree robbery. At issue in this case is the fact that the means in Brockie's charging information did not match the means described in the jury instructions. Brockie's charging information for the robberies indicated that "in the commission of and immediate flight therefrom, the defendant displayed what appeared to be a firearm or other deadly weapon," which is one of the alternative means of committing first degree robbery. *See* Mot. to Vacate J. and Sentence, Ex. B at 1-2; former RCW 9A.56.200(1)(b) (1975). However, the jury instructions described two alternative means for first degree robbery: "A person commits the crime of robbery in the first degree when in the commission of a robbery he or she *is armed with a deadly weapon or* displays what appears to be a firearm or other deadly weapon." Resp. to Pers. Restraint Pet., Attach. I, Instruction 8 (emphasis added); former RCW 9A.56.200(1)(a)-(b).

The jury ultimately found Brockie guilty of 2 counts of first degree robbery, 15 counts of first degree kidnapping, and 2 counts of making bomb threats. Brockie filed

2

a pro se motion to vacate his judgment and sentence, contending that his convictions should be vacated because the jury was instructed on an uncharged alternative means of committing first degree robbery. The superior court transferred the motion to the Court of Appeals as a timely successive personal restraint petition (PRP), and the Court of Appeals eventually transferred it to this court.

## ISSUE PRESENTED

Has Brockie shown actual and substantial prejudice resulting from the first degree robbery jury instruction on uncharged alternative means?

## ANALYSIS

Failing to properly notify a defendant of the nature and cause of the accusation of a criminal charge is a constitutional violation. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22; *State v. Kjorsvik*, 117 Wn.2d 93, 97, 812 P.2d 86 (1991). To obtain relief through a PRP, a petitioner alleging a constitutional error must demonstrate "actual and substantial prejudice." *In re Pers. Restraint of Cook*, 114 Wn.2d 802, 810, 792 P.2d 506 (1990). Accordingly, we must first determine whether the jury instruction on the alternative means in Brockie's case was error. The parties dispute whether this determination should be based on our long-standing case law on jury instructions on uncharged alternative means or our more recently developed test on errors in charging information. As described below, we continue to apply the rules developed through our jury instruction cases. Applying these rules, we must

determine whether the jury instruction was error. If so, we then determine whether the error resulted in prejudice.

1. *We Apply Our Prior Case Law on Jury Instructions, Not the* Kjorsvik *Charging Information Test*

Defendants must be informed of the charges against them, including the manner of committing the crime. *State v. Bray*, 52 Wn. App. 30, 34, 756 P.2d 1332 (1988). Beginning with the *Severns* case in 1942, we have long held that it is error for a trial court to instruct the jury on uncharged alternative means. *See, e.g., State v. Severns*, 13 Wn.2d 542, 548, 125 P.2d 659 (1942). On direct appeal, it is the State's burden to prove that the error was harmless. *Bray*, 52 Wn. App. at 34-35. This is based on our rule that "[e]rroneous instructions given on behalf of the party in whose favor the verdict was returned are presumed prejudicial unless it affirmatively appears they were harmless." *State v. Rice*, 102 Wn.2d 120, 123, 683 P.2d 199 (1984).

In a separate line of cases, we have addressed errors in charging information that are first raised in appeal. *Kjorsvik*, 117 Wn.2d at 105-06. The two-prong *Kjorsvik* rule differs from the jury instruction test described above in terms of the standards for both prejudice and burden of proof. Under the two-prong *Kjorsvik* rule, the reviewing court first liberally construes the charging information to determine if the defendant actually received notice. *Id.* at 105. If so, the court proceeds to a prejudice analysis. *Id.* at 106. If not, the court does not proceed to a prejudice analysis. *State v. McCarty*, 140 Wn.2d 420, 425-26, 998 P.2d 296 (2000).

4

In this case, the parties dispute whether Brockie's claim is an error in jury instructions (and thus *Severns* should apply) or an error in the charging document (and thus *Kjorsvik* should apply). Thus, a threshold issue in this case is whether the *Kjorsvik* charging document test applies when a defendant claims for the first time on appeal or in a PRP that the jury was instructed on an uncharged alternative means. We now clarify that the two-prong *Kjorsvik* test does not apply to such jury instruction cases,[1] as doing so would require overturning the *Severns* line of cases and we see no reason to do so.

### 2. *Brockie's Charging Information Did Not Put Him on Notice of the Alternative Means for His Robbery Charges*

The State asserts that the charging document's phrase "the defendant displayed what appeared to be a firearm or other deadly weapon" could mean either displaying or being armed with a deadly weapon, since one has to be armed with a weapon in order to display a weapon. But the State's argument fails because one may display what *appears to be* a deadly weapon without being armed with an actual deadly

---

[1] In contrast to the State's assertion, *State v. Kosewicz*, 174 Wn.2d 683, 278 P.3d 184, *cert. denied*, 133 S. Ct. 485 (2012), did not apply a *Kjorsvik* analysis to a jury instruction challenge. A careful reading of *Kosewicz* shows that we reviewed the defendants' felony and aggravated murder charges, for which there were no jury instructions on uncharged alternative means. 174 Wn.2d at 688-92. Although this court discussed jury instructions on uncharged alternative means in relation to the separate kidnapping charges in *Kosewicz, id.* at 690, those instructions were analyzed by the Court of Appeals under our jury instructions case law (including *Severns*), not the *Kjorsvik* charging information test, and were not reviewed by this court. *See Kosewicz*, 174 Wn.2d at 690-91; *State v. Kosewicz*, noted at 150 Wn. App. 1055, 2009 WL 1765941; *State v. Brown*, noted at 156 Wn. App. 1035, 2010 WL 2403353.

weapon (such as when a person displays a realistic-looking toy gun). *See, e.g., State v. Hauck*, 33 Wn. App. 75, 77, 651 P.2d 1092 (1982). Similarly, a person may be armed with, but not display, a deadly weapon (such as a gun hidden in a person's pocket). The legislature clearly intended to treat the two alternative means of committing robbery in the first degree as distinct, and the State's reading would improperly collapse the two.

By specifying the means of displaying what appeared to be a firearm or other deadly weapon, the charging information limited Brockie's notice to that particular means. Nothing in the charging information put Brockie on notice that he might be charged with the alternative means of first degree robbery while armed with a deadly weapon.

3. *Although It Was Error To Instruct the Jury on the Uncharged Alternative Means, Brockie Has Not Shown Actual and Substantial Prejudice*

Uncharged alternative means cases on direct appeal and in a PRP implicate different burdens of proof. In uncharged alternative means cases on direct appeal, Washington courts have held that instructing the jury on uncharged alternative means

is presumed to be prejudicial unless the State can show that the error was harmless.[2] *See Bray*, 52 Wn. App. at 34-36 ("An erroneous instruction given on behalf of the party in whose favor the verdict was returned is presumed prejudicial unless it affirmatively appears that the error was harmless.").

On collateral review the burden shifts. If a constitutional error is subject to harmless error analysis on direct appeal, that same error alleged in a PRP must be shown to have caused actual and substantial prejudice in order for the petitioner to obtain relief. *In re Pers. Restraint of Hagler*, 97 Wn.2d 818, 825-26, 650 P.2d 1103 (1982). This rule is based on the fundamental principle that "[a] personal restraint petition, like a petition for a writ of habeas corpus, is not a substitute for an appeal." *Id.* at 824. Collateral relief is limited because it "undermines the principles of finality of litigation, degrades the prominence of the trial, and sometimes costs society the right to punish admitted offenders." *Id.*

"[I]n order to prevail in a collateral attack, a petitioner must show that more likely than not he was prejudiced by the error." *Id.* at 826. The court determines

---

[2] We note that this case does not involve a constitutional error that is per se prejudicial on direct appeal. A constitutional error that is per se prejudicial on direct appeal cannot be shown to be harmless. *In re Pers. Restraint of St. Pierre*, 118 Wn.2d 321, 328-29, 823 P.2d 492 (1992) (on direct appeal, a defendant does not have to show prejudice for an error that is per se prejudicial because harm is presumed). In contrast, in an uncharged alternative means case, the State has the opportunity to show harmlessness. *See Bray*, 52 Wn. App. at 34-36. For the same reason, this case does not involve a structural error because structural errors are not subject to a harmless error standard on direct appeal. *See Brecht v. Abrahamson*, 507 U.S. 619, 629-30, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993).

actual prejudice "in light of the totality of circumstances." *In re Pers. Restraint of Music*, 104 Wn.2d 189, 191, 704 P.2d 144 (1985). Those circumstances include "the jury instructions given, the arguments of counsel, weight of evidence of guilt, and other relevant factors in evaluating whether a particular instruction caused actual prejudice." *Id.*

At the heart of Brockie's claim is that he may have been convicted of first degree robbery through an uncharged alternative means. Thus, the question is: Based on the evidence Brockie has presented, is it more likely than not that he was convicted of first degree robbery for being armed with a deadly weapon *rather than* displaying what appears to be a deadly weapon? In this case, the answer is no. Throughout the trial, the evidence consistently showed that the robber displayed what appeared to be a gun throughout the robberies. There is no indication that the trial included any discussion or claim that the robber was armed with a deadly weapon but did not display it. Thus, based on the facts in this particular case, any juror that found the robber was armed with a deadly weapon necessarily would have found that the robber displayed the weapon—the alternative means that was properly described in the charging information.

Moreover, Brockie's defense at trial was complete denial of any involvement in the robberies. He did not make any arguments about whether or not he displayed or was armed with a weapon. And Brockie does not argue here that he would have

mounted a different defense if he had been charged with being armed during the robbery. Since he has not demonstrated actual and substantial prejudice, we deny his request to vacate his robbery convictions.

Brockie also argues that if his robbery convictions are vacated, his related convictions should also be vacated. Because we are not vacating his robbery convictions, we do not reach that issue.

## CONCLUSION

A PRP is an extraordinary remedy that requires a petitioner to show actual and substantial prejudice. In this case, Brockie has failed to make such a showing and we therefore deny his petition.

_____
Owens, J.

WE CONCUR:

_____
Madsen, C.J.

_____

_____
Fairhurst, J.

_____

_____
Stephens, J.

_____
Wiggins, J.

_____
González, J.

_____
Gordon McCloud, J.

10